Walter W. Whelan, Esq. (SBN 106655)
Brian D. Whelan, Esq. (SBN 256534)
WHELAN LAW GROUP, A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Telephone: (559) 437-1079
Facsimile: (559) 437-1720
E-mail: walt@whelanlawgroup.com
E-mail: brian@whelanlawgroup.com

Attorneys for Defendants SANTÉ HEALTH SYSTEM, INC., SANTÉ HEALTH FOUNDATION, CENTRAL CALIFORNIA FACULTY MEDICAL GROUP (a.k.a. INSPIRE, INC.), GRANT NAKAMURA, MD., and MICHAEL SYNN, MD.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex. rel. MICHAEL TERPENING<br><br>Plaintiff,<br><br>v.<br><br>SANTÉ HEALTH SYSTEM, INC.; SANTÉ HEALTH FOUNDATION; CENTRAL CALIFORNIA FACULTY MEDICAL GROUP; GRANT NAKAMURA; and MICHAEL SYNN;<br><br>Defendants, | Case No.: 1:19-cv-01699-JLT-HBK<br><br>**REPLY BRIEF IN SUPPORT OF REMAINING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6), 9(b), and 8(a)**<br><br>Date: December 2, 2025<br>Time: 9:00 a.m.<br>Courtroom: 4<br>(Honorable Jennifer L. Thurston) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

I. RELATOR'S ALLEGATIONS DEFY REASON AND ARE IMPLAUSIBLE..............1

II. RELATOR CANNOT STATE A CLAIM FOR VIOLATION OF THE FCA..............3

    A. Relator Fails to Plead with Specificity Under Rule 9(b)………………..……..……...3

    B. Relator Has Not Pled the Elements of an Anti-Kickback Claim Statute Violation…………………………………………………………………………...…..4

    C. Relator Fails to Assert Remaining Defendants Violated the Stark Law……………..5

    D. Relator Has Failed to Plead a Claim Under § 3729(a)(1)(B)…………………………6

    E. Relator has Failed to Plead a Conspiracy Claim Under § 3729(a)(1)(C)…………….7

    F. Relator Has not Plead Requisite Facts for Each of the Remaining Defendants………………………………………………………………………….8

III. RELATOR HAS ABANDONED COUNTS FOUR, FIVE AND SIX…………………10

    CONCLUSION……………………………………………………………………..10

# TABLE OF AUTHORITIES

Cases                                                                                                    Page(s)

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)..................................................................................................1

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007)..................................................................................................1

*Godecke v. Kinetic Concepts, Inc.*
    937 F.3d 1201 (9th Cir. 2019)..............................................................................3, 4

*Moore v. Kayport Package Express, Inc*
    885 F.2d 531 (9th Cir. 1989)....................................................................................8

*Swartz v. KPMG LLP*
    476 F.3d 756 (9th Cir. 2007)....................................................................................8

*United States ex rel. Brown v. Celgene Corp.*
    No. CV 10-3164, 2014 WL 3605896 (C.D. Cal. July 10, 2014)..............................4

*United States ex rel. Ginger v. Ensign Group, Inc.*
    No. 8:15-cv-00389, 2022 WL 4110166, at *5 (C.D. Mar. 10, 2022).......................5

*United States ex rel. Gough v. Eastwestproto, Inc.*
    No. CV 14-465 DMG (SHX), 2018 WL 6929332, at *7 (C.D. Cal. Oct. 24, 2018).........7

*U.S ex rel. Silingo v. WellPoint, Inc.*
    904 F 3d 667 (9th Cir. 2018).....................................................................................7

*United States ex rel. Marion v. Heald Coll., LLC*
    No. 5:12-CV-02067-PSG, 2015 WL 4512843, at *4 (N.D. Cal. July 24, 2015).......8

*U.S. ex rel. Jacobs v. Advanced Dermatology & Skin Cancer Specialists, P.C.*
    No. EDCV 20-1373, 2024 WL 3540468, at *10 (C.D. Cal. July 5, 2024)................8

*United States v. Crescendo Biosceicne, Inc.*
    No. 16-CV-02043, 2020 WL 2614959, at *10 (N.D. Cal. May 23, 2020)................5

CODES & STATUTES

42 U.S.C. § 1320.................................................................................................4
42 C.F.R. § 411.354(c)(1)(i)..................................................................................5

Relator cannot plead the central details of his theory—improper referrals leading to claims to federal payors. Instead, Relator hangs all of his arguments on an incomprehensible contention in the Amended Complaint—that "Epic EHR is a closed network, meaning members of the network cannot make referrals to any hospitals or providers outside of the CMC owned and operated facilities." (Dkt, 70, ¶ 79.) From this, he reasons that pleading key details such as inducement, actual claims, actual referrals are unnecessary. (*See* Dkt. 81, at 10–11, 16, 19.) This allegation is demonstrably untrue and implausible. Once this straw man falls, nothing remains. Relator's opposition fails in many other ways to rebut the motion to dismiss. Relator improperly invites the Court to read Rule 9(b) to give him a specificity pleading pass because he has no direct connection with the Remaining Defendants. Relator also continues asserting bald legal conclusions in place of pleading detail. This is amply illustrated by his assertion that requisite facts "are intuitive." (*See* Dkt. 81, at 27.) Finally, after multiple chances to withdraw meritless claims in Counts 4, 5, and 6, Relator now abandons those claims after causing needless expense and waste of judicial resources.

## I.  RELATOR'S ALLEGATIONS DEFY REASON AND ARE IMPLAUSIBLE.

It is axiomatic that at this stage the Court assumes well-pleaded facts as true. But, there are limits. A plaintiff is not entitled to assert, and a court is not required to accept, implausible and "largely groundless" claims. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 546 (2007) (quotation omitted). This is the situation here when Relator argues Epic's EHR platform is self-contained and "unable to exchange information with other third-party record systems." This is akin to arguing the earth is flat. The allegation is implausible and need not be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[O]nly a complaint that states a *plausible claim* for relief survives a motion to dismiss." (Emphasis added; citing *Twombly*, 550 U.S., at 556.)).

As Remaining Defendants underscored several times, the Centers for Medicare & Medicaid Services ("CMS") expressed its ***goal of encouraging widespread adoption of interoperable electronic health records***." (Dkt. 75-1, at 17); (*id.* at 12). One of the key criteria for an EHR to be certified as "interoperable" was that the EHR include "specific capabilities that would give providers easy access and an easy ability to ***export clinical data*** about their patients ***for use in a different health information technology or a third party system*** for the purpose of their choosing."

(Dkt. 75-1, at 19 n.2.) Indeed, a core component of the AKS and Stark safe harbor/exceptions was to achieve the "ultimate goal" of "*fully interoperable* electronic health records for all patients." (Dkt. 75-1, at 17.).

Relator's allegation that "Epic EHR was not 'interoperable'" is so divorced from reality that it is implausible under Rule 8(a). (*See* Dkt. 70, at ¶ 100.) In the context of this case, interoperability is synonymous with information exchange.[1] To assert Epic—the gold standard in EHR technology (which has been certified as an interoperable system since day one)—is not interoperable is implausible.[2] Remaining Defendants put Relator on notice of the implausibility of his argument (*see* Dkt. 75-1, at 19), yet Relator has doubled down. The scope of his argument about Epic's lack of interoperability now goes well beyond Faculty Medical Group's contract and has become the core of his theory against all of the Remaining Defendants.[3] (*Compare* Dkt. 70, at ¶ 100, *with* Dkt. 81, at 7, 11, 12, 14, 15, 16, 19, 20, 22, 23, 29.) Relator's argument did not make sense when it was limited in the pleading, and it certainly does not make sense when broadened.

CMC is not only using the gold-standard in EHR technology, but CMC-operated hospitals also individually participate in multiple Health Information Exchanges ("HIEs") that exist for the sole purpose of facilitating the transfer of medical information across healthcare providers. The Trusted Exchange Framework and Common Agreement ("TEFCA") is one such HIE that was designed to facilitate secure data sharing between healthcare systems. By way of example, the Amended Complaint lists Clovis Community Medical Center as a CMC-operated hospital, (*see*

---

[1] "Interoperability" is defined as "such health information technology that . . . [a]llows for complete access, exchange, and use of all electronically accessible health information for authorized use under applicable State or Federal law." 45 C.F.R. § 107.102.

[2] CMS and the Office of the National Coordinator for Health Information Technology ("ONC") have established standards that EHR technology must meet to be a certified electronic health record technology. Epic is listed on the Certified Health IT Product List ("CHPL"), which is a comprehensive and authoritative listing of all certified health information technology that have been successfully tested and certified by the ONC. *See CHPL Listings*, https://chpl.healthit.gov/#/search (last visited November 13, 2025). One such criterion being that EHRs must "*electronically transmit* a patient's summary record *to other providers and organizations.*" 75 Fed. Reg. 44590, 44654 (July 28, 2010).

[3] This assertion is the basis for Relator's theory under 9(b), AKS, Stark Law, and conspiracy. (Dkt. 81, at 10–11 (lines 27–28, line 1); 14 (lines 19–24); 16 (lines 15–17), 20 (lines 4–6), 22 (lines 13–14), 23 (lines 11–16), and 26 (lines 20–22).)

Dkt. 70, at ¶ 15.a). This is a TEFCA certified entity, meaning that this CMC-operated hospital is a qualified health information network as certified by the ONC.

Putting aside the clear government sources cited confirming Epic's interoperability, Relator's new forced referral theory is implausible when one considers the logical end of such an argument. It is inconceivable that physicians affiliated with the Remaining Defendants would agree to handcuff their ability to refer their patients to the best option for treatment. In Relator's world, the patient who needs unique, lifesaving care from Mayo Clinic or MD Anderson would have to stay within the CMC system because CMC provided EHR access that does not permit referrals outside of the CMC system. This is implausible and does not meet Rule 8(a)'s standard. Remaining Defendants[4] and CMC-operated hospitals utilize Epic EHR, an ONC certified system, and individually participate in multiple HIEs that exist to facilitate the transfer of medical information across healthcare providers. Relator's notion that Defendants "could only refer to CMC's facilities," (Dkt. 81, at 16), is so implausible that it cannot be accepted as true.

## II. RELATOR CANNOT STATE A CLAIM FOR VIOLATION OF THE FCA.

### A. Relator Fails to Plead with Specificity Under Rule 9(b).

Relator advances a flawed interpretation of the Rule 9(b) standard. Here, Relator does not plead particular details of a scheme to submit false claims, nor does he plead reliable indicia that support an inference that false claims were submitted. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1209 (9th Cir. 2019). Relator's "reliable indicia" argument solely leans on completely innocuous statements like "Defendants . . . are Medicaid and Medicare-enrolled providers" and "CMC submitted millions of dollars' worth of claims to federally funded health care programs every year." (Dkt. 81, at 10–11). His remaining statements are implausible and cannot be accepted as true (as discussed *supra*): as such, the argument evaporates, and no scheme is pled.

Relator's attempt to distinguish *Godecke* misses the mark. The relator in *Godecke* pled much more particularized allegations and was a previous employee and insider of the defendant company. *Godecke*, 937 F.3d, at 1205. Here, Relator was a previous employee of PNA and was

---

[4] Santé System and Santé Foundation are not providers and do not operate CMC's EHR system.

never affiliated with the Remaining Defendants. Rather than grappling with this distinction, Relator argues that the reliable indicia in the complaint is analogous to *United States ex rel. Brown v. Celgene Corp.*, No. CV 10-3164, 2014 WL 3605896 (C.D. Cal. July 10, 2014). That is not so. The court in *Brown* found that the 100-plus page operative complaint satisfied Rule 9(b) and gave defendants "adequate notice of the misconduct alleged" by setting out the "particular workings of a scheme that was communicated directly to [her] by those perpetrating the fraud." *Id.*, at *9. The defendant in *Brown* was employed by the defendant company as a pharmaceutical sales representative and pled far more particular details than Relator pleads here. The court in *Brown* was able to look past the relator's inability to plead specific examples of claims because she provided "sufficient indicia that false claims were actually submitted." *Id.*, at *10. Relator fails to acknowledge that, just like the relator in *Godecke*, the relator in *Brown* was an insider *of the defendant*. In *Godecke* and *Brown* the courts concluded that the relators had enough inside information to have reliable indicia to excuse their failure to plead specifics about claim information. The same is not true here. Relator was not an insider of any Remaining Defendant and has not pled reliable indicia to support an inference that any false claims were submitted by the Remaining Defendants.

### B. Relator Has Not Pled the Elements of an Anti-Kickback Claim Statute Violation.

Relator relies on conclusory characterizations to support his allegations of a violation of the Anti-Kickback Statute. To plead an AKS violation, a relator must plead that defendants *knowingly* and *willfully* offered, paid, solicited, or received *remuneration* to *induce* a person to refer an individual for the furnishing of any federally funded services in order to sufficiently plead an AKS violation. 42 U.S.C. § 1320a-7b(b). Relator does not plead any details to support Remaining Defendants' knowledge or willfulness, nor does he explain how any remuneration Remaining Defendants received induced unlawful behavior. Remaining Defendants pointed to Relator's failure to plead any conversation or agreement that link the EHR access to a knowing and willful understanding or plan to refer patients. Relator chose not to address that deficiency in his response. Instead, he (again) rests only on the purported closed-network structure of the EHR to explain that the "link between remuneration and referrals is inherent." (Dkt. 81, at 16). "Inherent" and

"intuitive" allegations do not satisfy Rule 9(b)'s standard and cannot serve as the foundation for a claim that requires particularized allegations about knowing and willful intent.

Relator misunderstands what is required to plead AKS inducement when he relies on *United States v. Crescendo Biosceicne, Inc.*, No. 16-CV-02043, 2020 WL 2614959, at *10 (N.D. Cal. May 23, 2020). He contends that he has pled a "more evident" link between remuneration and resulting referrals than was pled in *Cresendo*. Yet, *Cresendo* acknowledged the relator's "great detail concerning the alleged patient fee-waiver scheme," including specific statements that demonstrated Cresendo's knowledge. *Id.,* at *11. In contrast, Relator again relies on the implausible allegation that "once Defendants joined [Epic], they could only make referrals to CMC's facilities." (Dkt. 81, at 20). Remaining Defendants laid out examples of missing details (Dkt. 75-1, at 18–20), yet Relator has failed to address his inability to plead detailed allegations.

### C. Relator Fails to Assert Remaining Defendants Violated the Stark Law.

Relator acknowledges that a *prima facie* Stark Act violation requires the existence of a compensation arrangement but falls short of pleading either a direct or indirect compensation arrangement. Relator bases his direct compensation argument on the notion that PNA was CMC's "alter ego." (Dkt. 81, at 21). Relator's attempt to sidestep the alter-ego pleading requirements results in another bald legal conclusion that the Court cannot accept as true. *See U.S. ex rel. Ginger v. Ensign Group, Inc.*, No. 8:15-cv-00389, 2022 WL 4110166, at *5 (C.D. Mar. 10, 2022) ("To satisfy the alter ego test, [a plaintiff] must make out a *prima facie* case (a) that there is such a unity of interest and ownership between Defendants and their subsidiaries that the entities no longer exist; and (b) that the failure to disregard Defendants' separate identities would result in fraud or injustice."). Even if Relator properly pled that PNA was CMC's alter ego, Relator has failed to allege the existence of a financial relationship. A Stark-regulated direct compensation arrangement must be between the entity furnishing DHS (CMC) and a physician with no intervening entity. 42 C.F.R. § 411.354(c)(1)(i). Relator fails to identify a single direct financial relationship between CMC (or PNA) and an individual physician.[5] In short, Relator misses the key point that he must

---

[5] Relator makes one failed attempt to allege a direct compensation arrangement between CMC and a physician, arguing "the Amended Complaint alleges a direct compensation arrangement between CMC and Santé

analyze compensation at the level of individual referring physicians.

Relator likewise fails to offer any argument that breathes life into his failed contention that he has alleged any indirect compensation arrangements. Pleading an indirect compensation arrangement requires Relator to plead: (i) an unbroken chain of financial relationships; (ii) with specific economic consequences to the referring physician at the end of each chain; and (iii) adequate knowledge of the foregoing by the claim submitter. 42 C.F.R. § 411.354(c)(2). Relator has not alleged an unbroken chain of financial relationships between CMC and a single referring physician. To do so, Relator would have had to identify each individual or entity in each chain, and the financial relationships creating each link, beginning with CMC, and ending with a physician. Relator's argument alleges remuneration that ends with entities (CCFMG, Santé Foundation, and "Nakamura's medical group") and not with physicians as required. Further, Relator does not adequately plead any detail about the specific compensation paid to physicians at the end of the unbroken chain (which would be required for the analysis of whether the compensation varied with or took into account the volume or value of the physician's referrals or other business generated for CMC).[6] It is not surprising that this element was not adequately pled, given the failure to articulate unbroken chains of financial relationships ending with the referring physician. Finally, Relator would need to have pled the final element, that CMC had the requisite knowledge about the aggregate compensation to the referring physician, which he has not. The Stark Law indirect compensation definition is nuanced at each step of the way. Relator bears the *prima facie* burden on each of these elements. He must shoulder that burden with at least some respect for the actual requirements of the law.

### D. Relator Has Failed to Plead a Claim Under § 3729(a)(1)(B).

In the absence of an underlying false claim, Count 2 falls. It also falls because Relator misunderstands the fraud-in-the-inducement theory advanced as the basis of Count 2. *See* JOHN T.

---

Foundation." (Dkt. 81, at 15.) This contention is inexplicable, because Santé Foundation is a nonprofit charitable foundation, not a physician.

[6] Relator ignores footnote 5 of Remaining Defendants' opening brief which cites that the rules regarding the indirect compensation definition have changed twice in recent years and the fact that the case he relies on has been abrogated by the amendments. (Dkt. 75-1, at 23n.5).

BOESE, JENNIFER M. WOLLENBERG, AND DOUGLAS W. BARUCH, CIVIL FALSE CLAIMS AND QUI TAM ACTIONS, § 1.12[C], p. 1-75, 6th ed. (2020, updated July 2025) (explaining that the fraud-in-the-inducement case "includes a variety of situations arising from false statements or illegal actions in the course of bidding on or negotiating federal contracts or grants."). Relator contends the Remaining Defendants' contracts with the government (in the form of Medicare and Medicaid enrollment renewals) were originally obtained through fraud. However, Relator has not responded to Remaining Defendants' argument and has not alleged any information regarding *when* CMC originally entered into its contract with Medicare or Medicaid, *when* such contracts were renewed, or *when* "Defendants falsely represented their intent to comply with the AKS and Stark Law which induced the government to contract to CMC." (Dkt. 81, at 24; Dkt. 75-1, at 28).

### E. Relator has Failed to Plead a Conspiracy Claim Under § 3729(a)(1)(C).

Relator's conspiracy count must fail because his substantive FCA claims fail. *See: U.S. ex rel. Gough v. Eastwestproto, Inc.*, No. CV 14-465, 2018 WL 6929332, at *10 (C.D. Cal. Oct. 24, 2018). Yet, even if the Court found claims pled with detail and other necessary *prima facie* elements, Relator's conspiracy claim must be dismissed because "the law still requires Relator[] to show the existence of an unlawful agreement between defendants to induce the government to pay a false claim, at least one act performed in furtherance of that agreement, and resulting harm." *Id.*, at *7. Relator has failed to plead this detail.

Relator posits that he has alleged who was involved in the conspiracy, the goal of the conspiracy, when the conspiracy began, and that "Defendants joined the conspiracy and took acts in furtherance of it when they succumbed to PNA's solicitation efforts and knowingly accepted remuneration in exchange for their referrals and recruitment efforts." (Dkt. 81, at 25). Listing the original parties to the complaint without providing any details about *who* at Faculty Medical Group, Santé System, Santé Foundation, CMC, or PNA was involved misses the mark. The Ninth Circuit is clear that: "[I]t is not enough to 'lump' together the dissimilar defendants and assert that 'everyone did everything.' More is required to plead the circumstances of a fraud with particularity." *U.S. ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018). Summarily supplying the who, what, and when of the alleged conspiracy does not satisfy the particularity

requirements of Rule 9(b). Relator has not advanced any particularized allegations about when Remaining Defendants "joined" the conspiracy that CMC allegedly embarked on in 2010, nor has he pled any particularized allegations about any statements made or specific actions taken by any of the Remaining Defendants in furtherance of the purported common purpose. *U.S. ex rel. Marion v. Heald College, LLC*, No. 5:12-cv-02067, 2015 WL 4512843, at *4 (N.D. Cal. July 24, 2015) (dismissing conspiracy claim, "[t]here are no factual allegations about the time, place or specific language used by the defendants to form their agreement").

Relator relies exclusively on *Jacobs* to support his conspiracy claim, but *Jacobs* is distinguishable because the complaint was "full of allegations which demonstrate that [the defendants] were aware that to bill for Mohs procedures, the same surgeon must make the excision and perform the histologic analysis." *U.S. ex rel. Jacobs v. Advanced Dermatology & Skin Cancer Specialists, P.C.*, No. EDCV 20-1373, 2024 WL 3540468, at *10 (C.D. Cal. July 5, 2024). The court in *Jacobs* explains that the relator's failure to explicitly allege that the defendants knew the proper billing procedure did not doom the conspiracy claim because the facts alleged made it "patently reasonable to conclude that [the defendants] were aware of the proper CPT billing parameters . . . and knew that their process did not qualify." *Id.* Relator does not plead any specific facts that make it "patently reasonable" to conclude that Remaining Defendants were aware of or actively participated in the formation of any alleged conspiracy.

### F. Relator Has Not Pled Requisite Facts for Each of the Remaining Defendants.

When "several defendants are sued in connection with an alleged fraudulent scheme . . . , Rule 9(b) does not allow a complaint to merely lump multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Relator is not required to "identify false statements made by each and every defendant," but he must "differentiate their allegations . . . and inform each defendant separately of the allegations surrounding [its] alleged participation in the fraud." *Id.*, at 764–65. At a minimum, he must "identify the role of each defendant in the alleged fraudulent scheme." *Id.*, at 765 (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)). Relator's failure to specify and differentiate the Remaining Defendant's conduct is best illustrated by his assertion that the "allegations against Santé System are intuitive." (Dkt. 81, at

27). All that is "intuitive" about Relator's allegations about Santé System (which is not even a health care provider) is that Santé System is an MSO operating like an MSO. To underscore this point, there is no allegation that a single person affiliated with Santé System agreed to do anything improper. The allegations merely affirm that Santé System is an MSO providing MSO services. Nor are there any specific allegations about how Santé System participated in the alleged fraudulent scheme, what it knew about the fraudulent scheme, or what it did to advance the scheme. "Intuitive" allegations are the very antithesis of what Rule 9(b) requires. Who did what, who said what, and who are the physicians who were allegedly induced to make actual referrals? **For Santé System, these questions are left unanswered.**

Relator's allegations against the other Remaining Defendants also fall short. Relator fails to refute that Dr. Synn is a fertility specialist who, because of the nature of his medical practice, could not submit or cause to be submitted any claims to Medicare or Medicaid. (*See* Dkt. 75-1, at 16, 24). Relator also attempts to assert (for the first time in his response brief) that Dr. Synn received trips to strip clubs, yet the Amended Complaint does not connect Dr. Synn individually to any purported strip club visit. (*See* Dkt. 70 at ¶¶ 1, 7, 68).[7] Relator argues that Dr. Nakamura knowingly received the purported benefits without pointing to one fact to support that conclusory contention. (*See* Dkt. 81, at 29). Relator also fails to respond to Remaining Defendant's argument that he has failed to provide the required context regarding the CIDS agreement and Dr. Nakamura. As to Faculty Medical Group, Relator merely repeats his allegations that it entered into a "pretextual" soft-landing provision with CMC but fails to grapple with the argument that such conclusory allegations are "impenetrable and well short of the detail and plausibility required by Rules 9(b) and 8(a)," (Dkt. 75-1, at 19), or that CMS promulgated a regulation regarding a provider's ability to "export clinical data about their patients for use in a different health information technology or a third party system for the purposes of their choosing." (Dkt. 75-1, at

---

[7] Relator's references to the strip club allegations perfectly exhibit how he continually lumps together the Remaining Defendants and other previously dismissed defendants. *See* Dkt. 70 ¶ 7 ("CMC provided Fresno-area medical groups and physicians, including [all Remaining Defendants'] compensation in the form of free access to its electronic health record network, cash, expensive wine, cigars, strip-clubs, trips with private plans, and more.").

19n.2 (quoting 80 Fed. Reg. 62602, 62645 (Oct. 16, 2015)). Relator's arguments as to Santé Foundation are similarly flawed—he again relies on conclusory allegations that Santé Foundation knowingly and willfully received cash grants in exchange for referrals while failing to grapple with the contention that Santé Foundation is not a health care provider, has no employees and, therefore, cannot make referrals. (*See* Dkt 75-1, at 26, 27; Dkt. 81, at 29.)

Relator need not "rebut every conceivable explanation" for Remaining Defendants' conduct (Dkt. 81, at 27), but he does have to confront his inability to provide any specifics as to each of the Remaining Defendant's actions—why do these specific encounters constitute improper remuneration and how did they induce the physicians to make referrals? His failure to do so further demonstrates why the Amended Complaint must be dismissed with prejudice.

### III. RELATOR HAS ABANDONED COUNTS FOUR, FIVE, AND SIX.

Relator fails to substantively address Remaining Defendants' argument that he has no standing to advance Counts Four (direct AKS), Five (direct Stark), and Six (injunctive and declaratory relief). He argues the AKS and Stark claims remain because the government may still elect to intervene in the case.[8] This is wrong. The government may later attempt to establish good cause to intervene and file a complaint in intervention that includes these claims. Until such hypothetical time, they cannot be advanced by Relator alone and should be dismissed.

### CONCLUSION.

For the foregoing reasons, this Court should dismiss with prejudice all Counts of Relator's Amended Complaint against the Remaining Defendants.

DATED: November 17, 2025

WHELAN LAW GROUP,
A Professional Corporation

By Walter W. Whelan, Attorney for Remaining Defendants

---

[8] Relator makes no reference at all to Count Six, thereby also abandoning his claim for injunctive and declaratory relief. *See: Silva v. U.S. Bancorp*, No. 5:10-cv-01854, 2011 WL 7096576, at *3 (dismissing a claim because the plaintiff failed to address the defendants' arguments in the opposition).

**PROOF OF SERVICE**

I am employed in the County of Fresno, State of California. I am over the age of 18 years and not a party to this action. My business address is 1827 East Fir Avenue, Suite 110, Fresno, California 93720. On November 17, 2025, I caused to be served the within document(s): **REPLY TO OPPOSITION TO MOTION TO DISMISS.**

[ ] **BY PERSONAL SERVICE:** I caused delivery of such envelope(s), by hand, to the office(s) of the addressee(s).

[ ] **BY EXPRESS MAIN DELIVERY:** I caused document(s) listed above to be deposited with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

[X] **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF (TrueFiling) system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted under the Court rules.

William R. Terpening, Esq.  
TERPENING LAW PLLC  
terpening@terpeninglaw.com

David E. Thiess, Esq.  
U.S. Attorney's Office  
david.thiess@usdoj.gov

Jeffrey Mitchell  
MITCHELL LEEDS, LLP  
jeff@mitchelllawsf.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 17, 2025, at Fresno, California.

JAMIE PHELPS